Macay, Judge—
delivered the opinion of the Court.
As our opinions rest upon a few plain and obvious principles, it is unnecessary to enter into are elaborate examination of the cases cited in support of this motion. They are generally speaking good law, (though to this, the case cited from 1 Dyer 69, forms an exception) but we do not think they apply to the case under consideration.
With respect to all those reasons which proceed upon the ground that the expressions "good and lawful men” are inserted in the caption and commission, instead of the word “freeholders,” the answer is, that these words are to be understood according to the subject matter relative to which they are applied. In this instance, the words are used as forming an inquest; and an inquest formed of good and lawful men, must be of freeholders. Liberos et legales homines, are the terms which have always been used in the venire facias, *50 and their legal import and signification is freeholders, without just exception. 3. Bl. Com. 351, 4. Bl. Com. 350. But even an objection to the caption of an indictment, founded in the omission of such words, ought not to prevail, especially if the indictment be in a Superior Court, and that which is omitted be in common understanding, implied in what is exqressed. 2. Haw. cap. 25, sec. 126.
The exception arising from the supposed error in setting out the commission, is not founded in point of fact, and has therefore been abandoned in the argument.
It is certainly an; undeniable rule, that the place where an offence is stated to have been committed, must appear to be within the jurisdiction of the Court which tried it; and the question for us to decide, is, whether the county of Greene does appear to be within the jurisdiction of this Court? This Court is authorised by the commission to enquire into any offences it describes, which were committed within any district of the State: the county of Greene is within a district of the state, and thence it necessarily follows, that it is also within the jurisdiction of this Court. The civil divisions of the territory of the state into districts, and their subdivision into counties, serve to define and limit the boundaries of jurisdiction allotted to the Superior Courts; in this respect they form an essential part of the public law, of which the Court can no more be ignorant than of the fact, that every county in the state is within some one of its districts. Thence, if an offence is said to be committed in a county, corresponding in name with one in the state, we must in reference to the extended jurisdiction of this Court, understand it *51 to be one and the same. Would it not be fanciful and extravagant, to presume it to be out of the state? And why make the presumption that it has been ceded to Congress, when we know the said is otherwise? Besides, the offence is said to have been committed by the Secretary of State, being there (in the county of Greene) in the exercise of the said office: here again, in order to give effect to this objection, we must make another unreasonable presumption, that, the Secretary of State was exercising his office, and did issue from his office out of the State, this military land warrant. But, in truth, if it had appeared on the trial, that the offence was committed without the limits of the state, the defendant would have been discharged for want of jurisdiction. But if the place said is within the jurisdiction of the Court, a mistake in that point would not have been material, unless the place had formed a part of the description of the offence, and was not stated merely as a venue. 4. Bl. Com. 306. In fine, the reasoning upon which all the cases are founded, which were cited to prove the necessity of naming the ville, is obviously inapplicable to the present topic because the jury are summoned altogether from other counties, than that where the offence is said to have been committed. As to the objections made to the first count, it is to be remarked that the gift of the offence there stated, is the fraudulently issuing a duplicate warrant, knowing the original to have been previously issued. We do not think it necessary that a positive allegation should have been made, that the original was issued, but it was necessary that proof to that effect should have been made on the trial, and it accordingly was made. In principle, the same objection was made in Rex vs. Lauby, 2 Str. 904, and overruled. If a positive averment of the issuing the original *52 warrant was unnecessary, it follows that the objection growing out of its not being particularly described, must also be invalid.
It is further objected, that no injury is stated to have ensued the act of thus issuing the duplicate.
If the act was done in the manner charged in the indictment, and as the jury have found it, the defendant has certainly committed a misdemeanor, which is indictable at common law. No rule of law requires, that a circumstance which forms no ingredient in the crime, should be stated in an indictment; and if a public officer intrusted with definite powers to be exercised for the benefit of the community, wickedly abuses, or fraudulently exceeds them, he is punishable by indictment, although no injurious effect results to an individual from his misconduct. The crime consists in the public example, in perverting those powers to the purposes of fraud and wrong, which were committed to him as instruments of benefit to the citizens, and of safety to their rights. If to constitute an indictable misdemeanor, a positive injury to an individual must be stated and proved, all those cases must be blotted out of the penal code, where attempts and conspiracies have been so prosecuted; yet they are numerous and authoritative. 3. Bac. 549, in notis, new edition.
The offence charged in the second count succinctly stated, is this, that the defendant issued a grant to Mulherrin upon a duplicate warrant, which had been previously issued to the heirs of E. Roberts, the right to which Mulherrin claimed under an assignment from Elijah Robertson. In order to fix this as a fraudulent act upon the defendant, it is deemed necessary by the drawer of the indictment, to describe the agency that Mulher *53 rin had in the business; accordingly the count begins with stating the steps taken by him, in order to obtain the grant, pretending that Robertson had assigned the warrant to him, although he did not produce any legal evidence to prove either Robertson’s title or his assignment; and the offence as laid, consists in issuing the grant under all the circumstances of the application made by Robertson, and with a full knowledge of them. There are therefore repeated in the second branch of the count, and introduced by the participle “ knowing” which necessarily refers to the whole of them, and carries the sense throughout the whole paragraph which contains the recital of Mulherrin’s acts or omissions. The sense of the whole count aids the construction, and unless the former is separated from the latter part of it, it is understood upon reading thus—that the defendant well knowing that the duplicate was illegal, &c. well knowing that Mulherrin had not produced to him any legal evidence to prove that E. Robertson was entitled, &c. or to prove that he had assigned it to Mulherrin, fraudulently issued the grant, &c.
The four following objections to the second count, have been substantially answered in noticing the exceptions to the first. What concerns the essence of the crime and the gift of the charge, is laid with certainty sufficient to enable the defendant to know the offence wherewith he is charged, and to enable the Court to discern upon the record a crime punishable by law: In misdemeanors, where no particular technical phrases are appropriated to describe the act, nice and overstrained exceptions have not usually prevailed. 2 & 3 Bur. Rep. The last reason is founded upon the supposition, that the lands stated to be included within the description of the grant, were not the lands *54 of North-Carolina, but of the United States, and it is thence concluded, that the fraud is exclusively cognizable in the courts of the United States. However the fact may be as to the title of the lands, the defendant was a public officer of the State of North-Carolina, and it was by virtue of that character alone that he was enabled to commit the offence charged in the indictment. All his acts wore the semblance of official duties, and but for the enquiry now instituted, might still retain the stamp of public authenticity. By his signature the faith of the state was pledged for the purity and honesty of the documents to which it was annexed, and her character, honor and dignity, required that it should never be pledged in vain. The security of the citizens’ rights, no less than the reputation of the state, was intimately connected with a faithful discharge of the duties appertaining to an office of such high importance; a confidence commensurate therewith, was reposed in him, and this, after patient examination, is found by the jury to have been abused in the particulars charged. To the jurisdiction of the date therefore, we think he is strictly and properly amenable.
Reasons overruled.